(No. 21476.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOE SPINO, Plaintiff in Error.

*Opinion filed December 23, 1932.*

REEDA & PEACE, (CLYDE C. FISHER, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff in error, Joe Spino, (hereafter called defendant,) was convicted in the criminal court of Cook county of robbery with a pistol. The indictment charged that on May 10, 1931, he robbed Theodore Lencioni of money and property valued at $80. The cause is here by writ of error.

The evidence shows that Lencioni was conducting a restaurant at 6323 North Clark street, in Chicago, and between midnight and one o'clock A. M. of said day three men came into his restaurant and ordered Lencioni, his cook and four other people to put up their hands. This order was complied with and the robbers tied the arms and legs of those present with ropes and aprons. Fifty dollars

was taken from the pockets of Lencioni and other money and a revolver were taken from his cash register. Lencioni was ordered to open the safe, but when he said he did not have the combination one of the robbers struck him on the head with a revolver. The victims were marched into a washroom and the door locked upon them. Pete Raffaelli, the cook, was robbed of $12. P. J. Harrer, proprietor of a meat market, was one of the victims. The restaurant was well lighted and the robbers were without masks. Besides Lencioni, Raffaelli and Harrer there were in the restaurant two waitresses and a man by the name of Brown. The last three mentioned persons were not witnesses but the first three were, and they positively identified defendant as the man who took the lead in the robbery, ordered them to put up their hands, tied Lencioni, took the money from his person and from the cash register, and otherwise directed the hold-up.

Defendant was a witness in his own behalf and denied all complicity in the crime. His principal defense was an alibi. He testified that he was at the house of his uncle, Tony Morici, on the night of May 10 until the next morning. Morici and his wife, Mary, testified that defendant came to their home about half-past nine o'clock, went to bed and did not go out until about seven o'clock the next morning. The witnesses could not satisfactorily explain how they fixed in their minds the exact date. Both testified that defendant frequently stayed all night at their home. On the record as it stands the evidence clearly warranted a judgment of conviction. The testimony of the People's witnesses is positive and convincing. Nothing appears to detract from its credibility. On the other hand, the proof of alibi is uncertain and doubtful.

The argument in favor of a reversal of the judgment is that defendant was a young Italian, twenty-one years of age, who spoke and understood the English language imperfectly; that his counsel were inexperienced and inca-

pable of protecting his rights, and that as a result thereof incompetent and prejudicial evidence was admitted against him without objection and thereby he was denied a fair trial. It is said that his lawyers were representatives of the public defender and were acting under appointment of the court. If this be true, the record fails to disclose any suggestion of defendant's inability to employ counsel or any appointment of counsel by the court. Under such condition of the record it cannot be presumed that defendant was not represented by counsel of his own selection.

Thomas Carmody, a police officer, a witness for the State, was asked if he knew where defendant was between May 28, 1931, and October 15, 1931. Counsel for defendant objected to the question. The assistant State's attorney claimed the question was proper because the witness Raffaelli had been asked whether or not he had seen defendant after May 10, and the purpose of the present question was to show that it would have been impossible for the witness to have seen defendant during that period of time. Counsel for defendant then said, "Well, you might as well have it, because the effect is there already. I will admit he was in the house of correction ninety days." This admission made it unnecessary for the court to rule on the objection to the question. What purpose counsel had for making the admission is not apparent. If he had insisted upon his objection the court doubtless would have sustained it. The assistant State's attorney then asked, "You were sent there for stealing, weren't you?" Defendant denied that he was convicted of that crime and said he had been sentenced for fighting. The questions were improper and should have been objected to by counsel for defense, but no objections were made. The fact that the record is not free from error will not ordinarily justify a reversal of a judgment of conviction where the competent evidence leaves no room for any doubt of the defendant's guilt. *People* v. *Cleminson,* 250 Ill. 135.

It is also claimed that counsel for defendant showed their incapacity by failing to cross-examine police officer Carmody, but no suggestion is made as to wherein defendant was prejudiced by such lack of cross-examination and no disadvantage to him is apparent.

It is also urged that the two alibi witnesses were not interviewed before they were put upon the stand. The record furnishes no substantial foundation for this contention. The cause was called for trial on Friday, December 11. Counsel for defense then stated that he had two witnesses whom he desired to use but who could not be present that day. He suggested to the court that the trial might proceed if he would be given an opportunity to produce these two witnesses at a later date. This plan was agreed upon, and after the conclusion of the evidence heard on Friday an adjournment was taken until the following Monday, when the witnesses appeared and were examined. Nothing in the record tends to show that the alibi witnesses were not interviewed before they testified. On the contrary, it appears that at the very outset of the trial counsel for defense knew who the witnesses were and what was expected to be proved by them.

We are not unmindful of the fact that there are some errors in the record, but after a careful consideration of all the testimony we are of the opinion that the errors complained of were not sufficient to have affected the result of the trial. A different finding could not have been anticipated. In such event a judgment will not be reversed in order to make a better record on another trial. *People v. Halpin,* 276 Ill. 363.

The judgment of the trial court is affirmed.

*Judgment affirmed.*